MAYFLOWER INSURANCE COMPANY, Plaintiff-Appellee, v. STAR BLOCK & BUILDERS SUPPLY CO., Defendant-Appellant.

Ohio Appeals, Seventh District, Lake County.

No. 624.   Decided May 13, 1959.

McNeal & Schick, Cleveland, for plaintiff-appellee.
Hollingsworth & Hollingsworth, Cleveland, for defendant-appellant.

## OPINION

By DONAHUE, J.

Plaintiff below was subrogated to claim of insured who was customer of defendant. The customer ordered stone to be delivered to him. Defendant ordered his driver not to deliver beyond the curb, presumably because prior experience had taught him that beyond the curb deliveries resulted in damage to premises, mostly of a small nature, but when added up, expensive. In fact, our guess would be that his insurance coverage stopped at the curb. His insurance contract would not, however, affect his liability.

The driver was requested by the plaintiff's insured to deliver inside his garage and, after some discussion, the driver backed in, being directed enroute by the plaintiff's insured. After some difficulties, the load was dumped in the garage. Plaintiff's insured then left the scene, leaving the driver to get out of the situation as best he could. In doing his best, he managed to damage the garage.

Two questions have been raised. First, as to the scope of the driver's employment; and second, as to whether or not the driver could have been termed a "loaned servant."

As to the first question, we do not feel that any extensive review of cases is necessary. Master and servant relations have been reviewed at great length, through the years, and in particular with regard to delivery trucks. The real question is, as to how far a master can limit

his own liability in respect to his agent's actions. It is clear, we think, that the deviation from orders must be major in nature. Who would contend that a master could limit his liability in an accident merely by ordering his servant not to drive more than twenty miles an hour; or to positively respect all traffic laws. To do so would be to virtually eliminate all liability on behalf of the master, leaving anyone damaged to rely on the driver alone.

We cannot believe that there was anything in this case of a major deviation as to absolve the master on this point.

Now, as to the second point, we believe that to come within the loaned servant theory, there must have been an actual or implied "loan." There is no evidence that the master told anybody that the driver could deliver inside the curb, if the plaintiff's insured took the responsibility. The evidence indicates that he told his driver, not to deliver inside the curb and made no qualifications. Therefore no actual loan was made. Can we infer a loan? There is no basis for doing so. The plaintiff's insured requested the driver but did not control him to any real extent. He did, of course, direct him in backing in, and to that extent we can see where he might have assumed the risk of damage. In this case the backing in, and the unloading were completed. Plaintiff's insured went away. Defendant's driver, thereupon, set out to leave under his own complete powers, with no direction from anybody. Plaintiff's insured's control, such as it was, had ceased when the accident occurred.

Therefore we must find that the defendant is responsible for his servant's negligent acts. Judgment affirmed.

GRIFFITH, PJ, PHILLIPS, J, concur.